Laura YOUNG, Plaintiff-Appellant,

v.

WEST BEND MUTUAL INSURANCE COMPANY
and Blue Cross Blue Shield of Wisconsin,
Defendants-Respondents.†

Court of Appeals

*No. 2008AP184. Submitted on briefs June 17, 2008.
—Decided August 21, 2008.*

2008 WI App 147

(Also reported in 758 N.W.2d 196.)

† Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Jason F. Abraham* and *Rebecca L. Ullenberg* of *Hupy and Abraham, S.C.*, Milwaukee.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Bradley W. Matthiesen* and *Kevin M. Differt* of *Matthiesen, Wickert & Lehrer, S.C.*, Hartford.

Before Higginbotham, P.J., Dykman and Vergeront, JJ.

¶ 1. HIGGINBOTHAM, P.J.   Laura Young appeals a circuit court order dismissing her insurer, West Bend Mutual Insurance Company ("West Bend"), as a party to Young's negligence action. Young was injured while riding as a passenger on a motorcycle driven by her boyfriend, Jeffrey Ramczyk. Young averred that she had purchased the motorcycle for Ramczyk, but retained title to it for reasons explained later. The circuit court, construing the so-called "drive other car" exclusion[1] to Young's policy, concluded that Young was the "owner" of the motorcycle within the meaning of the

---

[1] A "drive other car" exclusion prohibits an insured from recovering under his or her UIM coverage when injured in a car that the insured owns for which no premium has been paid. *Westphal v. Farmers Ins. Exch.*, 2003 WI App 170, ¶ 11, 266 Wis. 2d 569, 669 N.W.2d 166.

exclusion and therefore was not entitled to coverage under her underinsured motorist (UIM) policy. Because we conclude that a dispute of material fact exists concerning whether Young was the "owner" of the motorcycle within the meaning of the policy, we reverse and remand for further proceedings.

## *Background*

¶ 2. The pleadings, affidavits and depositions reveal the following when viewed in the light most favorable to Young, the non-moving party. Young purchased a Yamaha motorcycle for Ramczyk in late August 2005, which he traded in for a Harley-Davidson motorcycle in early September 2005. Young secured financing to purchase the cycle, and retained title to it. At the time, Ramczyk was going through a divorce. Young and Ramczyk agreed that once his divorce was final, title would be transferred to Ramczyk. According to Ramczyk, the reason for this arrangement was to prevent the cycle from becoming marital property.

¶ 3. In the meantime, Ramczyk assumed the monthly payments and purchased an insurance policy for the motorcycle in his own name. Ramczyk made two payments on the cycle in September 2005. He had an operator's permit for the motorcycle. Young never drove the cycle and did not have a motorcycle operator's license. Young placed no restrictions on Ramczyk's use of the cycle. Young briefly sought to prevent Ramczyk from using the cycle following a lover's quarrel, threatening to turn him in to the police for theft if he rode it home from work.

¶ 4. Less than three weeks after purchasing the motorcycle, Young was riding as Ramczyk's passenger on the cycle when the couple was involved in an

accident in which Young was seriously injured. Young sought and recovered the policy limit of $100,000 on Ramczyk's liability policy on the motorcycle. Because her damages exceeded the limit of Ramczyk's policy, Young made a claim with West Bend under her own UIM policy. After West Bend denied her claim, Young brought this action against West Bend.[2]

¶ 5.   West Bend moved for declaratory judgment to enforce the terms of its policy. West Bend argued that Young was not entitled to UIM coverage because she was the "owner" of the motorcycle within the meaning of the policy's "drive other car" exclusion.[3] The circuit court agreed, and dismissed Young's claims against West Bend. Young appeals.

### *Standard of Review*

¶ 6.   This appeal requests review of the circuit court's order granting West Bend's motion for declaratory judgment. By disposing of all of Young's claims against West Bend, the declaratory judgment in this case had the effect of a summary judgment. We note that both declaratory judgments and summary judgments are proper procedural devices for resolving insurance disputes. *See, e.g., Commercial Union Midwest Ins. Co. v. Vorbeck*, 2004 WI App 11, ¶ 7, 269 Wis. 2d 204, 674 N.W.2d 665. We therefore treat the circuit

---

[2] Young's suit also named Ramczyk and Blue Cross Blue Shield of Wisconsin as defendants. Young later voluntarily dismissed Ramczyk as a party. Blue Cross Blue Shield remains a party to the suit but did not file a brief in this appeal. We note that the dispute before us concerns coverage under Young's West Bend policy only.

[3] *See infra* ¶ 9 n.5.

court's declaratory judgment as an award of summary judgment in favor of West Bend. We review such an award de novo, applying the same methodology as the circuit court. *Westphal v. Farmers Ins. Exch.*, 2003 WI App 170, ¶ 9, 266 Wis. 2d 569, 669 N.W.2d 166. Summary judgment is appropriate if the pleadings and evidentiary submissions of the parties "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." WIS. STAT. § 802.08(2) (2005–06).[4]

¶ 7.   The resolution of this case also requires interpretation of insurance policy exclusions to determine whether coverage exists. The construction and interpretation of an insurance policy is a question of law that we review de novo. *Badger Mut. Ins. Co. v. Schmitz*, 2002 WI 98, ¶ 50, 255 Wis. 2d 61, 647 N.W.2d 223.

### Discussion

¶ 8.   This case requires us to interpret an insurance contract. Policy language is construed as it "would be understood by a reasonable person in the position of the insured." *Estate of Sustache v. American Family Mut. Ins. Co.*, 2008 WI 87, ¶ 19, 311 Wis. 2d 548, 751 N.W.2d 845 (citations omitted). Courts "do not construe policy language to cover risks that the insurer did not contemplate or underwrite and for which it has not received a premium." *Id.* However, "[e]xclusions are narrowly or strictly construed against the insurer if

---

[4] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted.

their effect is uncertain." *American Family Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶ 24, 268 Wis. 2d 16, 673 N.W.2d 65.

¶ 9.  The "drive other car" exclusion to Young's UIM coverage states that West Bend "do[es] not provide Underinsured Motorists Coverage for 'bodily injury' sustained . . . by an 'insured' while 'occupying' . . . any motor vehicle owned by that 'insured' which is not insured for this coverage under this coverage form."[5] The disputed issue in this appeal is whether the motorcycle is "owned by" Young within the meaning of the "drive other car" exclusion.

¶ 10.  The term "owner" (or "owned by") is not defined within the policy. The parties call our attention to prior cases that have defined "owner" within the context of an insurance coverage dispute. West Bend urges us to follow *Duncan v. Ehrhard*, 158 Wis. 2d 252, 260, 461 N.W.2d 822 (Ct. App. 1990), which equates the holding of title to ownership. In *Duncan*, the question of ownership arose in the context of determining which of two insurance policies was primary. The case turned on the meaning of "ownership" as used in the policies' excess clauses. The *Duncan* court declared that "[i]n common usage, 'owner' is often equated to title-ownership," *id.* (*citing Kietlinski v. Interstate Trans. Lines*, 3 Wis. 2d 451, 458, 88 N.W.2d 739 (1958)), and concluded that the titleholder of the vehicle was therefore the owner and his policy was primary.

---

[5] The policy's "drive other car" exclusion provides in full:

> We do not provide Underinsured Motorists Coverage for 'bodily injury' sustained:

> 1. By an 'insured' while 'occupying', or when struck by, any motor vehicle owned by that 'insured' which is not insured for this coverage under this coverage form. This includes a trailer of any type used with that vehicle."

¶ 11. Young points us to *Continental Casualty v. Transport Indemnity Co.*, 16 Wis. 2d 189, 114 N.W.2d 137 (1962), and *Loewenhagen v. Integrity Mut. Ins. Co.*, 164 Wis. 2d 82, 473 N.W.2d 574 (Ct. App. 1991), which hold that a person who is not the titleholder may, in some circumstances, still be the owner. In *Continental Casualty*, the supreme court addressed the meaning of "owner":

> The term 'owner' is of quite general application and is frequently applied to one having an interest in or claim upon property less than absolute and unqualified title. The word 'owner' has no fixed meaning, but must be interpreted in its context and according to the circumstances in which it is used.

*Continental Cas.*, 16 Wis. 2d at 193. The court then held that a lessee (who by definition lacked title) was nonetheless the owner of the leased equipment where the lease agreement gave the lessee full possession, control and use of the equipment. *Id.*

¶ 12. We restated in *Loewenhagen* the following rule established to resolve ownership disputes that arise in the context of a transfer of title: "[W]here title 'has been endorsed and delivered, a conclusive presumption arises, as provided in sec. 342.15(3),[6] that ownership was transferred; where it has not been endorsed and delivered, the intent and conduct of the parties govern.' " *Loewenhagen*, 164 Wis. 2d at 87 (*quoting*

---

[6] Wisconsin Stat. § 342.15(3) provides:

> Except as provided in s. 342.16 and as between the parties, a transfer by an owner is not effective until the provisions of this section have been complied with. An owner who has delivered possession of the vehicle to the transferee and has complied with the provisions of this section is not liable as owner for any damages thereafter resulting from operation of the vehicle.

*Bacheller v. Employers Mut. Liab. Ins. Co.*, 93 Wis. 2d 564, 573c, 290 N.W.2d 872 (1980) (*modified on reconsideration*)). Applying this rule, we concluded in *Loewenhagen* that a man who had yet to pay for a pickup truck but had taken title to it was the owner of the vehicle and therefore the man could not recover under the seller's insurance. *Loewenhagen*, 164 Wis. 2d at 87.

¶ 13.  These prior cases offer a narrower (*Duncan*) and a broader (*Loewenhagen* and *Bacheller*) definition of "owner" in other contexts. However, they do not resolve the meaning of "owned by" as used in this policy. To ascertain the meaning of "owned by," we begin with the contract language, taking into account the context in which the words appear. *See Tempelis v. Aetna Cas. and Sur. Co.*, 169 Wis. 2d 1, 9, 485 N.W.2d 217 (1992). The provision in question is the "drive other car" exclusion to UIM coverage. We have explained that "the purpose of [a] drive other cars exclusion" is *not* to deny coverage "to the insured when he or she has infrequent or casual use of a vehicle other than the one described in the policy." *Westphal*, 266 Wis. 2d 569, ¶ 11. Rather, such an exclusion is intended "to exclude coverage of a vehicle that the insured owns or frequently uses for which no premium has been paid." *Id.*

¶ 14.  In light of the purpose of the "drive other car" exclusion, we conclude that the narrow definition of ownership set forth in *Duncan*—that ownership is determined by title-ownership alone—is inappropriate here. A narrow interpretation of ownership in this context would render the exclusion inapplicable whenever title to an insured's "other car" is held by someone else, even if the insured drives the "other car" regularly. This result would be contrary to the exclusion's purpose of denying coverage for any vehicle that the insured

254

uses frequently but on which the insured pays no premium. Conversely, an interpretation of owner that is based on title-ownership alone would result in denials of coverage to persons whose "other car" is theirs in title alone—an outcome that would also appear to be inconsistent with the purposes of the exclusion.

¶ 15. Although our opinion rests on a plain meaning interpretation of the relevant contract language, to the extent that "owned by" may be said to be ambiguous, we must interpret it against the insurer and in a manner that limits the applicability of the "drive other car" exclusion. *See Varda v. Acuity*, 2005 WI App 167, ¶ 9, 284 Wis. 2d 552, 702 N.W.2d 65 ("[E]xclusions are narrowly or strictly construed against the insurer and any ambiguities are resolved in favor of coverage."). Here, this interpretive principle requires that we favor an interpretation of "owned by" that takes into account factors beyond title-ownership when construing the exclusion.

¶ 16. For the foregoing reasons, we conclude that the definition of ownership set forth in Duncan is inappropriate here. Upon examining the part of the policy in which the phrase "owned by" is used, as well as the circumstances in which the dispute arises, we instead conclude that the definition of ownership provided in *Bacheller* and *Loewenhagen* is appropriate. Accordingly, we consider the "intent and conduct of the parties," *Loewenhagen*, 164 Wis. 2d at 87 (*quoting Bacheller*, 93 Wis. 2d at 573c), in addressing whether Young owns the motorcycle for purposes of the "drive other car" exclusion.

¶ 17. Applying this definition of ownership to the facts before us, we conclude that the question of whether Young is the owner of the motorcycle within

the meaning of the "drive other car" exclusion is a disputed issue of material fact. The affidavits and other summary judgment materials support a view that Ramczyk was the owner of the motorcycle at the time of the accident. This view is demonstrated primarily by the conduct of the parties, as represented in the affidavits. Young avers that she purchased the motorcycle for Ramczyk, and was holding title to it only until his divorce was finalized. Ramczyk testified that the reason for this arrangement was to prevent the cycle from becoming marital property. Young also avers that she never drove the motorcycle, and does not have a motorcycle operator's license. She testified in deposition that she did not have keys to the cycle. Young further avers, and Ramczyk testified in deposition, that Ramczyk purchased his own insurance policy on the motorcycle for which he was the named insured. Young testified in deposition that Ramczyk paid for all gas and had total control of the motorcycle. Ramczyk also testified that he made two finance payments on the cycle in September 2005; Young testified that the couple agreed that Ramczyk would be responsible for the finance payments. Ramczyk kept the motorcycle in his own garage. Cumulatively, we conclude that this conduct is sufficient to support a reasonable inference that Ramczyk was the owner of the motorcycle for purposes of the "drive other car" exclusion.

¶ 18.  We note that other parts of the affidavits and other summary judgment materials support a contrary reasonable view. It is undisputed that Young held title to the motorcycle—a relevant, though not determinative, factor in ascertaining ownership in this context. She purchased the motorcycle and secured financing for it. Significantly, Young once threatened to report Ramczyk for theft if he drove it, suggesting that she

256

may have believed herself to be the owner of the motorcycle. Whether Young retained title because she intended to keep the motorcycle—whether to ride or for some other purpose—or whether she retained title only to prevent the cycle from becoming the marital property of Ramczyk and his wife appears to be in dispute, and may be material to the matter of ownership.

¶ 19. Moreover, Ramczyk testified in deposition that Young was the "legal owner" of the motorcycle because she purchased it and held the title. He further testified that he told the insurance agent that Young owned the motorcycle when he took out the insurance policy. While the above-listed evidence cumulatively supports a reasonable inference that Young was the owner of the motorcycle within the meaning of the "drive other car" exclusion, it is not the only reasonable inference that may be drawn in light of Young's affidavits and other summary judgment submissions.

¶ 20. For the foregoing reasons, we conclude that a disputed issue of material fact exists concerning whether Young was the owner of the motorcycle for purposes of determining whether the policy's "drive other car" exclusion applies. Therefore, we reverse the circuit court's order dismissing West Bend from the action, and remand for further proceedings.

*By the Court.*—Order reversed and cause remanded for further proceedings.