COURT OF APPEALS
DECISION
DATED AND FILED

April 23, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.     **2022AP1401**

**STATE OF WISCONSIN**

Cir. Ct. No. 2021CV4632

**IN COURT OF APPEALS
DISTRICT I**

JOHN KLEIN, PAUL LOUGH, ERIC PFEIFFER, BRIAN MATTE, DAVID KRITZECK, MICHAEL HAMANN, KENNETH MURRAY, JAMES CAMPBELL, JOSEPH BAUER, CRAIG NAWOTKA, ALEXANDER MANTAY, HERBERT SMITH, STEPHAN WHITE, DENISE RUEDA, ANGELA GONZALEZ, EDDIE ALBRITTON, GREGORY GARNER, PATRICK PAJOT, SHELONDIA TARVER, JOSEPH HALL, BRIAN BURCH, DIANA BARCHUS, DANIEL BOECK, SCOTT KEMPINSKI, DARREN LISS AND GREG DANES,

   **PLAINTIFFS-APPELLANTS,**

 **V.**

CITY OF MILWAUKEE AND MILWAUKEE EMPLOYEES' RETIREMENT SYSTEM/ANNUITY AND PENSION BOARD,

   **DEFENDANTS-RESPONDENTS.**

   APPEAL from an order of the circuit court for Milwaukee County: FREDERICK C. ROSA, Judge. *Affirmed*.

   Before White, C.J., Donald, P.J., and Geenen, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   Plaintiffs, a group of police officers and firefighters for the City of Milwaukee, appeal an order of the circuit court denying their motion for declaratory judgment and dismissing their action.  They claim that although they all began employment with the City on February 21, 2000, they are nonetheless entitled to certain retirement benefits eligible to retirement fund members who were "in active service" as of January 1, 2000.  We agree with the circuit court that Plaintiffs are not eligible for these benefits, and accordingly, we affirm.

## BACKGROUND

¶2      The following facts are undisputed.  Plaintiffs are police officers and firefighters for the City of Milwaukee, all of whom began their employment on February 21, 2000.  Upon starting their employment, each plaintiff enrolled in a retirement fund known as the Firemen's and Policemen's Survivorship Fund ("Survivorship Fund").  The Survivorship Fund was one of several City-administered pension and/or retirement benefit plans available to City employees through the City of Milwaukee Employes' Retirement System ("ERS" or "the system").[1]

¶3      Prior to Plaintiffs beginning employment, the City was involved in litigation regarding its ERS.  To end the litigation, a resolution was proposed whereby the assets within the system's various retirement funds would be merged

---

[1]  In *Richland School District v. DILHR*, 166 Wis. 2d 262, 271 n.1, 479 N.W.2d 579 (Ct. App. 1991), we explained that "employe" is sometimes used in opinions instead of the significantly more common "employee" as the result of an express drafting decision of the original drafter of WIS. STAT. chapters 101 through 108.  The decision was made in order to avoid typos on a typewriter.

into one fund known as the "Combined Fund." After the merger, members would participate in and receive certain pension or retirement benefits through the new Combined Fund, and the Survivorship Fund benefits would cease to exist.

¶4      On October 29, 1999, a Global Pension Settlement ("GPS") was reached. Relevant here, the GPS provided that the Survivorship Fund would merge into the Combined Fund if 90% of all affected members, i.e., employees enrolled and participating in the Survivorship Fund, owning 90% of the retirement assets agreed to the GPS. Moreover, in order for the GPS to take effect without a court order, 100% of the members of the Survivorship Fund had to agree to the Survivorship Fund's dissolution through a written consent.

¶5      Under the GPS, after 100% of the Survivorship Fund members agreed to its dissolution, the Survivorship Fund's assets would be transferred to the Combined Fund, and the Survivorship Fund would cease to exist. Additionally, those members "in active service" as of January 1, 2000, would be awarded an additional two years of service: for covered police officers, after completing twenty-five years of creditable service or attaining age fifty-seven; and for covered firefighters, after twenty-two years of creditable service or attaining age forty-nine. They would also receive a one-time bonus paid out as a lump sum upon retirement in an amount equal to 5% of that member's accrued benefit at retirement ("Additional Benefits").

¶6      In April 2000, the City Common Council passed various ordinances to create the new Combined Fund and facilitate the GPS. It enacted Milwaukee City Charter Ordinance § 36-08-9 to provide a means by which ERS members enrolled in the system prior to June 28, 2000, could execute a written consent form agreeing to retroactively participate in the Combined Fund. Specifically, that ordinance

stated that members "enrolled in the retirement system prior to June 28, 2000 may execute a consent form to participate in the [C]ombined [F]und in which case they shall participate in the [C]ombined [F]und effective January 1, 2000." MILWAUKEE, WIS. MCC § 36-08-9. Other ordinances codified the Additional Benefits provided under the GPS, specifically stating that police officers and firefighters "in active service as of January 1, 2000, who participate[] in the [C]ombined [F]und" are eligible for the additional service credit and a 5% bonus. MILWAUKEE, WIS. MCC §§ 36-04-4-a & b, 36-05-11-a & b.

¶7      Subsequently, the City solicited consent from members via a "Global Settlement Consent Form," directed to each member. The consent form allowed members to either "consent" or "object" to the GPS. It explained that, by consenting, members agreed to participate in the new Combined Fund and obtain other benefit improvements, and authorized the City to proceed to implement the GPS on their behalf. It also provided an explanation of the new benefits structure and the implementation process.

¶8      Plaintiffs, because they were enrolled in ERS and the Survivorship Fund prior to June 28, 2000, were required to execute consent forms to participate in the Combined Fund. Each Plaintiff consented to the GPS and to their participation in the Combined Fund. A sufficient number of ERS members consented to the merger and to participate in the Combined Fund. The City implemented the GPS.[2]

---

[2] From their hire date on February 21, 2000, through February 2001, Plaintiffs made contributions via payroll deduction to the Survivorship Fund. Upon the implementation of the GPS, those contributions were returned to Plaintiffs.

4

¶9 In 2021, two firefighter plaintiffs nearing twenty-two years of service made a request to collect the Additional Benefits from the Combined Fund. ERS denied the request. The City concluded that, although the two plaintiffs were members of the Combined Fund as of January 1, 2000 by having executed the written consent permitting retroactive participation, they were not "in active service" on that date as required by the GPS and relevant ordinances. Therefore, they were not eligible to receive the Additional Benefits.

¶10 On August 3, 2021, Plaintiffs filed the instant lawsuit seeking a declaratory judgment that they are entitled to the Additional Benefits. Plaintiffs filed a motion for declaratory judgment. The circuit court denied the motion and dismissed Plaintiffs' action. In an oral ruling, the circuit court concluded that Plaintiffs were not "in active service" as of January 1, 2000, because they did not become employed by the City until February 21, 2000.

¶11 Plaintiffs appeal.

## DISCUSSION

¶12 Plaintiffs appeal the circuit court's order denying their motion for declaratory judgment and dismissing their action. The circuit court's ruling against Plaintiffs had the effect of a summary judgment; the parties agree that our review should be governed by the summary judgment standard that we apply de novo using the same methodology as the circuit court. *See* ***Young v. West Bend Mut. Ins. Co.***, 2008 WI App 147, ¶6, 314 Wis. 2d 246, 758 N.W.2d 196. Additionally, the issues involved require the interpretation of ordinances and thus present a question of law that we review de novo, applying the same principles used in statutory interpretation. ***Milwaukee Dist. Council 48 v. Milwaukee Cnty.***, 2019 WI 24, ¶11, 385 Wis. 2d 748, 924 N.W.2d 153. As such, we begin with the language of the

ordinance, giving the words their "'common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning.'" ***Id.*** (citation omitted). If the meaning of the language is plain, the inquiry ordinarily ends. ***Id.***

¶13 Plaintiffs argue, and the City agrees, that by signing the consent form to convert the Survivorship Fund into the Combined Fund, they became members of the Combined Fund "effective January 1, 2000[,]" under MILWAUKEE, WIS. MCC § 36-08-9. However, the parties disagree about whether Plaintiffs were "in active service" as of January 1, 2000.

¶14 Plaintiffs argue that surrounding ordinances and certain language in the consent form make clear that they are considered to have been "in active service" as of January 1, 2000, and are therefore eligible for the Additional Benefits. In support, they cite MILWAUKEE, WIS. MCC § 36-13-2-c, which provides that rights to benefits vest on the date of the commencement of their membership in the system. They further point to the following language in the consent form:

> If I consent to the Global Settlement by checking the "Consent" box below, I understand that I am agreeing to participate in the newly created "Combined Fund" within the Milwaukee Employes' Retirement System ("MERS"). I understand that this Combined Fund will provide improved benefits to its participants and fund structural changes that will benefit the City of Milwaukee ("City") and City Agencies participating in the MERS. I understand that I will be authorizing the City to proceed to implement the Global Settlement on my behalf, thereby waiving my right to object to the terms and conditions of the Global Settlement and my right to object to my participation in the Combined Fund. I further understand that the City has reserved the right to refuse to proceed with implementation of the Global Settlement, even with my consent, if 90% of the members of the MERS representing 90% of the assets of the MERS do not consent to the Global Settlement.

6

> If I object to the Global Settlement, by checking the "Object" box below, I understand that I am refusing to participate in the Combined Fund and <u>will not receive the additional pension benefits provided under the Global Settlement</u>, unless the Court orders objecting members to participate in the Global Settlement.

(Plaintiffs' emphasis).

¶15    Plaintiffs recognize that the GPS requires them to have been "in active service" in order to be eligible for the Additional Benefits, but they argue that the meaning of "active service" should be controlled by MILWAUKEE, WIS. MCC § 350-40-1-a, which reads:

> 350-40.  Vacations.  1.  DEFINITIONS.
>
> a.  "Active service" means the time spent as an appointed employee on the city payroll in a position qualifying for fringe benefits ….

Although Plaintiffs do not explicitly say so, it appears that their argument is that because they are deemed to be "participants" in the Combined Fund effective January 1, 2000, they were "on the city payroll in a position qualifying for fringe benefits" as of that date as well, therefore qualifying for the Additional Benefits.

¶16    We agree with the circuit court and the City that Plaintiffs are not entitled to the Additional Benefits because they were not "in active service." As the City points out, Plaintiffs' interpretation runs contrary to well-established principles of statutory interpretation. Plaintiffs' interpretation treats "in active service" and "participation in the [C]ombined [F]und" as identical concepts even though they appear together in the same sentence. "Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage." *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶46, 271 Wis. 2d 633, 681 N.W.2d

110. In order to avoid surplusage, we read these phrases as two distinct requirements to be eligible for the Additional Benefits.

¶17 There is no dispute that Plaintiffs "participat[ed] in the [C]ombined [F]und" effective January 1, 2000 by virtue of having executed the written consent allowing for retroactive participation, so they meet this requirement of eligibility. Further, the parties agree that we should use the definition of "active service" in MILWAUKEE, WIS. MCC § 350-40-1-a to determine if Plaintiffs were "in active service" for purposes of Additional Benefit eligibility.

¶18 Although it is "[t]his court, not the parties," that decides questions of law, *Cramer v. Eau Claire County*, 2013 WI App 67, ¶11, 348 Wis. 2d 154, 833 N.W.2d 172 (citations omitted), we agree with the parties that it is appropriate to apply Chapter 350's definition of "active service" in this context. *See Kalal*, 271 Wis. 2d 633, ¶46 (explaining that "closely-related statutes" are proper considerations in interpreting statutory language). We conclude that Plaintiffs do not meet the definition. "Active service" in Chapter 350 requires that the employee be: (1) in an appointed city position; (2) on the city payroll; and (3) in a position qualifying for fringe benefits. MILWAUKEE, WIS. MCC § 350-40-1-a.

¶19 We agree with the City that under Chapter 350's definition, it is likely not possible that "active service" could ever begin on a date earlier than the employee's date of hire because that is the earliest date that an employee could fill a city position or be added to the city's payroll. Because Plaintiffs were not "appointed employee[s] on the city payroll in a position qualifying for fringe benefits" as of January 1, 2000, they were not "in active service" as of that date.

Therefore, the circuit court correctly concluded that Plaintiffs were ineligible for the Additional Benefits.[3]

¶20    For the foregoing reasons, we affirm the circuit court.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2021-22).

---

[3] Because we conclude that Plaintiffs were not "in active service" as of January 1, 2000, we do not address the issue of whether Plaintiffs waived their right to the Additional Benefits by signing the consent form to join the Combined Fund.