**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**December 10, 2020**

**Sheila T. Reiff**
**Clerk of Court of Appeals**

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2019AP672**

**STATE OF WISCONSIN**

Cir. Ct. No. 2017CV34

**IN COURT OF APPEALS**
**DISTRICT IV**

DEBORAH ROGERS,

   PLAINTIFF-APPELLANT,

V.

GREAT WEST CASUALTY COMPANY,

   DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Adams County: W. ANDREW VOIGT, Judge. *Affirmed in part; reversed in part and cause remanded for further proceedings.*

Before Blanchard, Kloppenburg, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Deborah Rogers appeals a circuit court order dismissing her operative complaint against Great West Casualty Company ("Great West"). For the reasons set forth below, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion. We conclude that two of Rogers' claims—based on respondeat superior liability and vicarious liability under federal motor carrier law—should not have been dismissed.

## BACKGROUND

¶2     The following facts are not disputed for purposes of this appeal. On September 9, 2016, Rogers suffered catastrophic personal injury when her vehicle collided with a semi-tractor-trailer truck driven by James Kearns. Kearns, who had a blood alcohol concentration greater than .04 at the time of the accident, failed to come to a stop at a stop sign and then drove directly into Rogers' path. Rogers' vehicle struck the tractor-trailer's fuel tanks, causing both vehicles to burst into flames.

¶3     At the time of the accident, Kearns was operating the tractor-trailer for Ranken Trucking, Inc. ("Ranken"), which owned the semi-tractor. The trailer Kearns was hauling was owned by Polyock All Star Commodities, LLC ("All Star"), which provided it to Polyock Transport ("Transport") under a "Rental Equipment Agreement." The load being hauled during the accident was being shipped pursuant to a "Raw Product Hauling Agreement" between Seneca Foods Corporation ("Seneca") and Transport, under which Transport agreed to haul vegetables for Seneca. Transport contracted with semi-tractor owner Ranken under a "Trailer Interchange Agreement" for Ranken to take responsibility for hauling the trailer and its contents. Thus, Kearns worked for Ranken, drove a

Ranken semi-tractor, and hauled Seneca's vegetables in an All Star trailer pursuant to Transport's contract with Seneca and Ranken's contract with Transport.

¶4      At the time of the accident, Ranken was covered by an insurance policy issued by Northland Insurance Company ("Northland").  Rogers filed a bodily injury claim with Northland under Ranken's policy, and Northland paid Rogers the policy's $1,000,000 liability limit in exchange for Rogers releasing Northland, Ranken, Kearns, Transport, and All Star for all claims up to the liability limit.  As part of the agreement, Rogers reserved her claims against other insurance companies that may provide coverage for the accident.

¶5      After collecting from Northland, Rogers filed this action against All Star and its insurer, Great West.

¶6      Rogers' operative complaint alleged that Great West had a policy in effect under which Great West insured not only All Star, but also Transport, Ranken, and Kearns.  The complaint alleged that, due to these contractual obligations, Great West was liable to Rogers on five claims:  (1) Ranken's and Kearns' negligence; (2) Transport's liability under the doctrine of respondeat superior for Ranken's and Kearns' negligence; (3) Transport's vicarious liability for Ranken's and Kearns' negligence pursuant to federal law under which Transport was a "motor carrier" and therefore a "statutory employer" of Ranken and Kearns; (4) Transport's negligent hiring, training, retention, and supervision of Ranken and Kearns; and (5) "concerted action/joint enterprise," which generally alleged that Transport and All Star worked in concert to transport vegetables for Seneca.

¶7      Great West filed several answers and also filed a motion for judgment on the pleadings, based on theories addressed in the Discussion section

below. Following briefing from the parties and a hearing, the circuit court granted Great West's motion and dismissed the operative complaint in its entirety. Rogers appeals.

## DISCUSSION

¶8 Rogers presents the following five issues for our review. First, Rogers argues that the circuit court erroneously dismissed her claim alleging Ranken's and Kearns' negligence because Ranken and Kearns were "insureds" within the meaning of All Star's policy with Great West, or, alternatively, that a material factual dispute exists as to this issue. Second, Rogers contends that, if the exclusionary provision on which the circuit court relied in dismissing her negligence claim is construed to exclude Ranken and Kearns as "insureds," then the provision runs afoul of Wisconsin's omnibus coverage statute, WIS. STAT. § 632.32.[1] Third, Rogers argues that the court erroneously dismissed her claim alleging vicarious liability because material issues of fact exist as to whether Transport was vicariously liable as a "motor carrier" within the meaning of federal law and therefore assumed nondelegable duties with respect to the events that led to this action. Fourth, Rogers argues that All Star and Transport had respondeat superior liability for Ranken's and Kearns' negligence, making dismissal of her respondeat superior liability claim improper, and that Transport was also liable due to its alleged negligent hiring, training, retention, and supervision of Ranken and Kearns, which made dismissal of her claim alleging that form of alleged negligence also improper. Finally, Rogers contends that the court erred in

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

4

dismissing her claim alleging "concerted action/joint enterprise" because a disputed fact exists regarding "whether [] All Star is liable as part of a concerted action or joint enterprise with [] Transport" with respect to the arrangements to haul the Seneca vegetables at the time of the accident. After discussing the standard of review, we address each of Rogers' arguments in turn, setting forth additional background facts as necessary.

## I. Standard of Review and Insurance Policy Provisions at Issue

¶9 Whether judgment on the pleadings under WIS. STAT. § 802.06 is appropriate is a question of law that we review de novo. *Helnore v. DNR*, 2005 WI App 46, ¶2, 280 Wis. 2d 211, 694 N.W.2d 730. A judgment on the pleadings "is essentially a summary judgment minus affidavits and other supporting documents."[2] *New Richmond News v. City of New Richmond*, 2016 WI App 43, ¶28, 370 Wis. 2d 75, 881 N.W.2d 339 (quoting *Freedom from Religion Found., Inc. v. Thompson*, 164 Wis. 2d 736, 741, 476 N.W.2d 318 (Ct. App. 1991) (internal quotation marks omitted)). Accordingly, we "apply the first two steps of summary judgment methodology to determine whether judgment on the pleadings is appropriate." *Id.* Under the first step, we "determine whether [the complaint] states a claim on which relief can be granted." *Id.* If it does, we then "determine whether the answer shows the existence of a material factual dispute." *Id.* Under

---

[2] The parties attached documents to their pleadings that the circuit court considered in reaching its determinations. Wisconsin has adopted the federal incorporation-by-reference doctrine. *Soderlund v. Zibolski*, 2016 WI App 6, ¶37, 366 Wis. 2d 579, 874 N.W.2d 561 (2015). Under the doctrine, we "may consider a document attached to a motion to dismiss or for judgment on the pleadings without converting the motion into one for summary judgment, if the document was referred to in the plaintiff's complaint, is central to his or her claim, and its authenticity has not been disputed." *Id.* We follow the assumption of the circuit court and the parties that the doctrine applies here to allow consideration of the documents attached to the pleadings.

this two-step analysis, judgment on the pleadings is appropriate only if the complaint states a claim on which relief can be granted and the answer raises no issues of material fact. *See id.*

¶10   This case requires us to interpret the terms of an insurance policy. As with the interpretation of other contracts, insurance policy interpretation is a question of law that we review de novo. *Jackelen v. Russell*, 2015 WI App 93, ¶11, 366 Wis. 2d 255, 873 N.W.2d 265. In construing insurance policy language, we apply the same rules of construction that govern other contracts. *Id.* Accordingly, "[w]e construe insurance policies 'to give effect to the intent of the parties as expressed in the language of the policy.'" *Id.* (quoting *Folkman v. Quamme*, 2003 WI 116, ¶12, 264 Wis. 2d 617, 665 N.W.2d 857). "We do this by giving the words in an insurance policy 'their common and ordinary meaning, that is, the meaning a reasonable person in the position of the insured would have understood the words to mean.'" *Id.* (quoting *State Farm Mut. Auto Ins. Co. v. Langridge*, 2004 WI 113, ¶14, 275 Wis. 2d 35, 683 N.W.2d 75).

¶11   When interpreting an insurance policy, we follow a three-step procedure to determine whether it provides coverage to a particular insured. *See American Fam. Mut. Ins. Co. v. American Girl, Inc.*, 2004 WI 2, ¶24, 268 Wis. 2d 16, 673 N.W.2d 65. First, we examine the allegations of fact in the insured's claim to determine whether the policy provides for an initial grant of coverage. *Id.* If there is an initial grant of coverage, we then look to see whether any exclusions apply that would deny coverage. *Id.* And finally, if an exclusion applies, we determine whether there are any applicable exceptions that reinstate the coverage. *Id.* Requirements that are contained within the definition of an "insured" may also be treated as exclusions. *See Mau v. North Dakota Ins. Rsrv. Fund*, 2001 WI 134, ¶33, 248 Wis. 2d 1031, 637 N.W.2d 45 ("'To treat the definition differently

6

from the exclusion merely because it is couched in the definition section of the policy would be to exalt form over substance ....'" (quoted source omitted)).

¶12　The All Star-Great West policy provides that Great West "will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'." The policy also defines who is an "insured" for purposes of personal injury actions:

> **1. WHO IS AN INSURED**
>
> The following are "insureds":
>
> **a.** You for any covered "auto".
>
> **b.** Anyone else while using with your or any adult family member's permission a covered "auto" you own, hire, or borrow except:
>
> ....
>
> **(5)** Anyone who has hired or borrowed an "auto" from you that is used in a business other than yours unless under a written agreement you are required to hold them harmless.
>
> **(6)** Anyone that is using an "auto" of yours under a written Trailer Interchange Agreement unless under a written agreement you are required to hold them harmless.

¶13　The policy specifies that "you" and "your" refer to the named insured, which is All Star. The All Star-owned "Covered 'Autos'" are listed in the "Schedule of Autos," which includes the trailer involved in the accident.[3] One of

---

[3] Rogers agrees that "you" is defined in the policy as the named insured and that the named insured is All Star.

the policy endorsements names Transport as an "Additional Insured (Lessor)" under the policy. Great West does not dispute that Transport is an additional insured under this endorsement.

## II. Rogers' First Claim: Ranken's and Kearns' Negligence

¶14    In granting judgment on the pleadings to Great West on Rogers' first claim, Ranken's and Kearns' negligence, the circuit court concluded that, pursuant to the exclusion in clause (6) of the policy, Ranken and Kearns were not "insureds" and were therefore not covered by the policy. As quoted above, Clause (6) excludes from coverage "[a]nyone that is using an 'auto' of yours [All-Star's] under a written Trailer Interchange Agreement unless under a written agreement you are required to hold them harmless." As previously noted, Transport contracted with Ranken under a "Trailer Interchange Agreement" pursuant to which Ranken would haul the trailer and its contents. Rogers has not alleged that there was a written agreement under which either All Star or Transport would hold Ranken harmless. In fact, as Great West notes, under the Trailer Interchange Agreement, Ranken was required to indemnify and hold Transport harmless with respect to use of the trailer.

¶15    Rogers offers two theories for the argument that the exclusion in clause (6) does not apply to exclude Ranken and Kearns from coverage. Her first theory is that the clause does not apply under its plain language. Her second theory is that the endorsement in the policy adding Transport as an "Additional Insured (Lessor)" implies that All Star had rented its trailer to Transport, and Transport then *leased back* All Star's trailer to All Star, and All Star then provided the trailer for use by Ranken. Relying on this understanding of the meaning of the endorsement, Rogers argues that a material dispute of fact exists with respect to

whether Ranken and Kearns obtained the trailer for use from Transport pursuant to the Trailer Interchange Agreement or instead from All Star, without reference to that agreement, and that the circuit court therefore erred in concluding that clause (6) excluded coverage. We address these two theories in turn.

## A. *Plain-language theory*

¶16    Rogers' plain-language argument is premised on the proposition that the exclusion in clause (6) applies to exclude Ranken and Kearns from coverage only if the Trailer Interchange Agreement was entered into between *All Star*, the named insured, and Ranken. Thus, Rogers contends that clause (6) is inapplicable because the Trailer Interchange Agreement was executed with *Transport*. Relying in part on the rule that we are to construe exclusions of coverage in insurance policies narrowly, Rogers asks us to adopt her interpretation. *See **Cardinal v. Leader Nat'l Ins. Co.***, 166 Wis. 2d 375, 382, 480 N.W.2d 1 (1992). Great West counters that nothing in the policy language requires that the trailer interchange agreement referred to in clause (6) has to be executed between the named insured and the operator of the covered auto.

¶17    We agree with Great West. The clause (6) exclusion unambiguously applies if the covered auto is being used "under a written Trailer Interchange Agreement." Nothing in the policy's language states or implies that the exclusion applies to trailer interchange agreements only when they were executed by the named insured and the operator of the applicable auto. "[W]hen an insurance policy's terms are plain on their face, the policy must not be rewritten by construction." ***Meyer v. City of Amery***, 185 Wis. 2d 537, 543, 518 N.W.2d 296 (Ct. App. 1994). "Courts cannot insert what has been omitted or rewrite a contract in the guise of construing contracts." ***Id.*** at 543-44. The rule of narrow

9

construction that Rogers cites applies only when there is ambiguity in the policy's language. *See Stuart v. Weisflog's Showroom Gallery, Inc.*, 2008 WI 86, ¶¶19-20, 311 Wis. 2d 492, 753 N.W.2d 448; *see also Frost v. Whitbeck*, 2002 WI 129, ¶¶16-20, 257 Wis. 2d 80, 654 N.W.2d 225. Here, there is no ambiguity, and, correspondingly, Rogers' argument fails. Applying a plain-language interpretation to the policy, we agree with Great West that clause (6) excludes Ranken and Kearns from coverage and we affirm the circuit court in that respect. This results in dismissal of Rogers' first claim, alleging negligence on the part of Ranken and Kearns.

*B. Endorsement-based theory*

¶18    Under Rogers' second theory that coverage extends to Ranken and Kearns, Rogers argues that, even if we decline to interpret clause (6) in such a way that would restrict its application to only those situations in which a trailer interchange agreement was executed between Ranken and All Star, the circuit court erred in granting judgment on the pleadings because there remains a question of fact regarding whether Transport leased the trailer back from All Star prior to Ranken taking possession for Kearns to haul it. Rogers contends that this fact matters because the clause (6) exclusion would not apply in the circumstances as she posits them: Ranken and Kearns were not using the trailer under the Trailer Interchange Agreement with Transport but instead were granted use of the trailer by its owner, All Star, without reference to that agreement.

¶19    Rogers' argument is not persuasive for at least the following reasons. First, it is premised solely on an endorsement in the policy that lists Transport as an "Additional Insured (Lessor)." Rogers points to nothing else in the record to support her premise that All Star, after renting its trailer to Transport, leased back

its own trailer from Transport and then made it available for use by Ranken without reference to the Trailer Interchange Agreement with Transport. Even at the judgment on the pleadings stage, the information upon which Rogers relies is insufficient to support the suggestion that this hypothetical scenario may have occurred. Simply because Transport was named as an additional insured, in a "lessor" role, does not mean, or even suggest, that Transport leased back the rented trailer to its owner All Star. Indeed, the additional information the circuit court had before it when granting judgment on the pleadings suggests otherwise. This information includes the Rental Equipment Agreement showing that All Star rented the trailer to Transport; the Trailer Interchange Agreement between Transport and Ranken showing that Transport (not All Star) loaned the trailer to Ranken; and the Raw Product Hauling Agreement between Seneca and Transport showing that Transport agreed to haul vegetables for Seneca.

¶20 Significantly, the circuit court also had before it allegations contained in Rogers' own complaint, which we accept as true for the purpose of judgment on the pleadings. *See Schuster v. Altenberg*, 144 Wis. 2d 223, 228, 424 N.W.2d 159 (1988) (for the purpose of conducting judgment on the pleadings analysis, "'the facts pleaded by the plaintiff, and all reasonable inferences therefrom, are accepted as true'" (quoting *Prah v. Maretti*, 108 Wis. 2d 223, 229, 321 N.W.2d 182 (1982))). In fact, all three versions of Rogers' complaint—her original complaint, amended complaint, and second amended complaint—allege the *opposite* of her speculative theory that Transport had leased the trailer back to All Star by the time of the accident. Specifically, the operative complaint alleges that "[Transport] loaned [the trailer at issue] to [Ranken], pursuant to a Trailer Interchange Agreement dated June 15, 2016," and that "Transport hired [Ranken] to haul loads of vegetable products using the trailers [that] [Transport] rented from

[All Star] pursuant to a Raw Product Hauling Agreement for Seneca Foods." Her original complaint and amended complaint, which her second amended complaint purports to reallege and incorporate, allege that "[o]n September 9, 2016, [Kearns] was granted express or otherwise implied permission by [Transport] through a Trailer interchange agreement to operate [the trailer at issue], owned by [All Star]." Thus, the factual premise of this argument, that All Star leased the trailer back from Transport, is not only absent from, but also contradicted by, the allegations in her complaint. And the fact that Transport was an additional insured, in a role of "lessor," does not create a material factual dispute on this issue that renders judgment on the pleadings inappropriate. Accordingly, we affirm the circuit court's determination that Ranken and Kearns are excluded from coverage by clause (6), resulting in dismissal of Rogers' first claim alleging their negligence.[4]

### III. Omnibus Coverage Statute

¶21 Rogers argues that, if the policy's clause (6) exclusion is construed to preclude coverage, then the exclusion is void because it contravenes

---

[4] We also summarize an argument by Great West that we need not address. The argument is that, even if Rogers had identified a factual issue about whether All Star leased the trailer back from Transport, then clause (5) would apply to exclude Ranken and Kearns from coverage. As quoted above, clause (5) excludes from coverage "[a]nyone who has hired or borrowed an 'auto' from [All Star] that is used in a business other than [All Star's] unless under a written agreement [All Star is] required to hold them harmless." Rogers responds that clause (5) would not apply because, if Ranken and Kearns were using the trailer after it had been leased back from Transport to All Star, then the trailer would not have been, in the language of clause (5), "used in a business other than" All Star's. We note that the circuit court declined to grant Great West's motion for judgment on the pleadings on the basis of clause (5), concluding that the court could not determine as a matter of law that Great West was entitled to judgment under that clause. Because we conclude that coverage is excluded under clause (6), we need not consider whether clause (5) also excludes coverage. *See Barrows v. American Fam. Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

Wisconsin's omnibus coverage statute ("the omnibus statute"), WIS. STAT. § 632.32. Great West contends, and the circuit court agreed, that the exclusion was not prohibited by the omnibus statute.[5] *See* § 632.32(5)(e). We affirm the circuit court's determination on this issue for multiple reasons, including a lack of development in Rogers' arguments on appeal.

¶22 The omnibus statute applies to every automobile insurance policy issued or delivered in Wisconsin, unless the statute specifically provides otherwise. *See **Clark v. American Fam. Mut. Ins. Co.***, 218 Wis. 2d 169, 173-74, 577 N.W.2d 790 (1998); WIS. STAT. § 632.32(1). Rogers relies on § 632.32(3), which provides:

> **(3)** REQUIRED PROVISIONS. Except as provided in sub. (5), every policy subject to this section issued to an owner shall provide that:
>
> (a) Coverage provided to the named insured applies in the same manner and under the same provisions to any person using any motor vehicle described in the policy when the use is for purposes and in the manner described in the policy.
>
> (b) Coverage extends to any person legally responsible for the use of the motor vehicle.

---

[5] In its briefing on this issue, Great West purports to incorporate by reference arguments from its circuit court reply brief. We have accounted for the substance of the intended argument but we remind counsel that this type of incorporation by reference is not an appropriate form of appellate advocacy because "at a minimum, it creates the potential for exceeding the allowable length of briefs and violates the rule addressing the required form of appellate arguments." **Bank of America NA v. Neis**, 2013 WI App 89, ¶11 n.8, 349 Wis. 2d 461, 835 N.W.2d 527; *see also* WIS. STAT. RULE 809.19(1)(e) and (8)(c). In addition, it is not effective as advocacy. Separately, at another point in its brief, Great West improperly cites an unpublished opinion, **Powell v. State**, 188 Wis. 2d 605, 526 N.W.2d 280 (Ct. App. 1994) (unpublished slip op.), in violation of WIS. STAT. RULE 809.23(3) and without noting that the opinion is unpublished.

This court has explained that these provisions "effectively impose[] a permissive user requirement" on automobile insurance policies, "requir[ing] that automobile policies provide coverage to any person 'using' the vehicle with permission of the named insured, 'in the same manner' as the policy would if the liable party was the named insured." *Blasing v. Zurich Am. Ins. Co.*, 2013 WI App 27, ¶¶16-17, 346 Wis. 2d 30, 827 N.W.2d 909 (italics omitted).

¶23    However, subsec. (5) of the omnibus statute, titled "permissible provisions" and referred to in subsec. (3), further provides in pertinent part that "[a] policy may provide for exclusions not prohibited by sub. (6) or other applicable law." WIS. STAT. § 632.32(5)(e); *see also Clark*, 218 Wis. 2d at 174. Subsection (6) of the omnibus statute (not to be confused with clause (6) of the policy) expressly prohibits certain types of exclusions, none of which Rogers argues apply here.  Our supreme court has interpreted the statutory language in subsec. (5)(e) as establishing a two-part test to determine whether a policy exclusion is permissible:  (1) whether the exclusion is prohibited by § 632.32(6), and if not, then (2) whether the exclusion is prohibited by "any other applicable law." *Belding v. Demoulin*, 2014 WI 8, ¶29, 352 Wis. 2d 359, 843 N.W.2d 373; *see also Mau*, 248 Wis. 2d 1031, ¶¶31-32.

¶24    Rogers argues that the policy's clause (6) exclusion violates the omnibus statute insofar as it excludes permissive users of the trailer under a written trailer interchange agreement from coverage while at the same time covering All Star, as the named insured, under identical circumstances.  In support of this argument, Rogers relies solely on a hypothetical scenario, which again involves All Star leasing back its own trailer from Transport, only this time pursuant to a trailer interchange agreement.  Rogers posits that, in such a scenario, All Star would qualify for coverage due to its being the named insured under the

policy, even though it would be using its own trailer pursuant to a trailer interchange agreement, whereas clause (6) would exclude other permissive users from coverage if they used the trailer under a trailer interchange agreement (in the absence of a hold-harmless agreement). Rogers contends that this hypothetical scenario illustrates that the clause (6) exclusion contravenes the omnibus statute's requirement that permissive users be covered to the same extent and in the same manner as the named insured.

¶25 Great West responds that the factual scenario Rogers portrays is "unproven speculation" that relies on the "faulty logic" that All Star would need a trailer interchange agreement to use its own trailer.[6] Great West also argues that the exclusion is not prohibited by WIS. STAT. § 632.32(6) and therefore passes muster under § 632.32(5)(e), which allows for exclusions "not prohibited by sub. (6) or other applicable law."

¶26 In her reply brief, Rogers does not dispute that the policy's clause (6) trailer-interchange-agreement exclusion is not prohibited by WIS. STAT. § 632.32(6), nor does she identify any "other applicable law" under § 632.32(5)(e) that prohibits this exclusion, beyond the permissible user requirements set forth in subsec. (3) of the statute. This omission is significant, given precedent suggesting

---

[6] In response to Great West's contention that Rogers' argument is based on "unproven speculation," Rogers asserts: "Whether this factual scenario happened in the instant matter or not is irrelevant (though an endorsement in the policy suggests it did happen). The fact that it can happen is what makes the attempted exclusion in the Great West policy void as a matter of law." She also contends that, because this matter was before the circuit court on judgment on the pleadings, she was not "afford[ed ...] the opportunity to conduct discovery to develop proof of the disputed facts." However, for the reasons stated in the text of this opinion, we conclude that Rogers' argument related to the omnibus statute is undeveloped and that she has conceded that exclusions not prohibited by subsec. (5)(e) of the omnibus statute are not prohibited by the statute.

that exclusions that are not specifically barred by § 632.32(6) or other applicable law are not prohibited under the omnibus statute. *See, e.g.*, *Clark*, 218 Wis. 2d at 173-76 (noting that § 632.32(5)(e) allows insurance companies to "provide for exclusions not prohibited by sub. (6) or other applicable law," and determining that a territorial exclusion was not prohibited by § 632.32(6) and was therefore permissible, even though the exclusion denied uninsured motorist coverage that is generally required by § 632.32(4)); *Brown v. Tokio Marine & Nichido Fire Ins. Co.*, 2012 WI App 45, ¶16, 340 Wis. 2d 707, 811 N.W.2d 872 (policy provision excluding lessees of the named insured's automobiles from coverage was permitted by § 632.32(5)(e) and therefore did not violate the omnibus statute); *but cf. Progressive N. Ins. Co. v. Hall*, 2005 WI App 17, ¶¶17-18, 278 Wis. 2d 499, 692 N.W.2d 355 (policy exclusion that violated § 632.32(3)(a) was not permissible under § 632.32(5)(e)).

¶27     We take as a concession Rogers' failure to reply to Great West's argument that the clause (6) exclusion is permissible because it is not prohibited under subsec. (5)(e) of the omnibus statute. *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (lack of reply may be taken as a concession).

¶28     Further, and more fundamentally, we conclude that Rogers' argument that the policy violates the omnibus statute is undeveloped. Rogers relies entirely on her hypothetical scenario involving All Star leasing back the trailer it owns from Transport and then providing it to Ranken. Despite the abundance of case law discussing the omnibus statute, Rogers does not discuss or even cite any cases, with the exception of the language from *Blasing* quoted above regarding the omnibus statute's general imposition of a permissive user requirement. She likewise does not attempt to reconcile subsec. (3)'s "[e]xcept as

provided in sub. (5)" language with subsec. (5)(e)'s language generally allowing exclusions not otherwise prohibited. An analysis of the statute and case law is required to resolve this issue, and that analysis is lacking here. Because Rogers has not adequately developed her argument that the clause (6) trailer interchange agreement exclusion violates the omnibus statute, we do not consider this argument further, and we affirm the circuit court's ruling with respect to this issue. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (we need not address undeveloped arguments).

¶29 In sum, we affirm the circuit court's order granting judgment on the pleadings with respect to Rogers' first claim alleging negligence by Ranken and Kearns.[7]

*IV. Rogers' Second and Third Claims: Respondeat
Superior and Statutory Vicarious Liability
Pursuant to Federal Motor Carrier Law*

¶30 The circuit court addressed Rogers' second and third claims—based respectively on respondeat superior liability and vicarious liability under federal motor carrier law—in tandem, stating that the claims "rise and fall together," and dismissing both claims. For the reasons discussed below, we conclude that the court erred in granting judgment on the pleadings with respect to these claims.

---

[7] The circuit court appears to have rejected Rogers' omnibus statute argument on the ground that, under Rogers' hypothetical scenario, All Star (like all permissive users) would also have been excluded from coverage under clause (6) if All Star had a trailer interchange agreement with Transport. However, we question whether this is correct. It appears that All Star would in fact be granted coverage under the policy if All Star were using one of its own trailers under a trailer interchange agreement because All Star is the named insured and is explicitly provided coverage by subparagraph (II)(A)(1)(a) of the policy. The policy's exclusions, listed in subparagraph (II)(A)(1)(b), apply only to "anyone else," not to "you," which is defined as the named insured, All Star. However, because we affirm the circuit court's conclusion regarding the omnibus statute on other grounds, we need not decide this issue.

We first examine the court's rationale in dismissing these claims and explain why we conclude that dismissal was in error. We then address Great West's argument that federal motor carrier law does not apply because the shipment at issue here did not involve interstate commerce, and conclude that there remain material factual disputes on that issue.

A. *The circuit court's dismissal of Rogers' second and third claims*

¶31   It is unclear why the court reached the conclusion that the second and third claims "rise and fall together." The operative complaint and its attachments do not indicate that Rogers' respondeat superior liability involves federal motor carrier law, which is the basis for Rogers' third claim. Instead, the second claim appears to be a stand-alone argument based on Wisconsin law.[8] That said, as shown in our discussion of federal motor carrier law below, some of the pertinent evidence may overlap in determining whether an entity is a "motor carrier" or a "broker" under federal law and whether an entity may be vicariously liable under a theory of respondeat superior.[9] Thus, we note for purposes of remand that, to the extent the circuit court meant to suggest that claims two and three rise and fall together because they depend on some of the same evidence, that analysis may be appropriate.

---

[8] We note that in discussing dismissal of her respondeat superior claim on appeal Rogers cites only Wisconsin law.

[9] Regarding allegations of fact in support of Rogers' claim based on respondeat superior we note that the operative complaint alleges, among other things, that Ranken and Kearns were "operating the tractor-trailer unit in the course and scope of their employment with [Transport]." In addition, her original complaint, which the operative complaint purports to reallege and incorporate, alleges that Kearns was operating under the dispatch, direction, and control of All Star; that All Star gave Ranken and Kearns specific load information, directions, and time limitations; and that All Star had direct control of Kearns' physical conduct.

¶32　Regardless of the circuit court's rationale, and given our de novo standard of review, we conclude that, for the reasons we explain below, judgment on the pleadings was improper with respect to Rogers' claim based on federal motor carrier law. And because the court's ruling on that claim was tied to its ruling on the second claim, and the evidence bearing on these issues may be similar, we reverse the court's judgment on the pleadings with respect to both claims and remand for further proceedings consistent with this opinion.

## B. Whether Transport is vicariously liable as a statutory employer under federal motor carrier law

¶33　Rogers argues that the circuit court erred in granting judgment on the pleadings with respect to her vicarious liability claim because there exists a material dispute of fact as to whether Transport[10] was a "motor carrier" within the meaning of that phrase as used in 49 C.F.R. § 371.2. According to Rogers, if Transport was a motor carrier under federal law, then Transport is vicariously liable for Ranken's and Kearns' negligence as its "statutory employer." *See Schramm v. Foster*, 341 F. Supp. 2d 536, 540-41, 547-51 (D. Md. 2004); *Harris v. FedEx Nat'l LTL, Inc.*, 760 F.3d 780, 782-83 (8th Cir. 2014).[11]

---

[10] Although Rogers' argument focuses almost exclusively on Transport's status as a motor carrier, Rogers also asserts at various points that All Star was likewise a motor carrier with respect to the Seneca transaction. We agree with Great West that, to the extent Rogers argues that All Star was a motor carrier with respect to the transaction, that argument is undeveloped and we therefore do not consider it. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

[11] With the exception of United States Supreme Court decisions on federal law, we are not bound by federal court decisions. *See City of Weyauwega v. Wisconsin Cent. Ltd.*, 2018 WI App 65, ¶12 n.4, 384 Wis. 2d 382, 919 N.W.2d 609. However, on issues of federal law, we may generally follow federal circuit and district court decisions that we consider to be persuasive. *See id.*

19

¶34    Federal regulations create a "statutory employee relationship" between authorized motor carriers and those whose services or equipment motor carriers hire or lease to deliver cargo. *See Crocker v. Morales-Santana*, 854 N.W.2d 663, 669 (N.D. 2014) (citing 1 DAVID N. NISSENBERG, THE LAW OF COMMERCIAL TRUCKING: DAMAGES TO PERSONS AND PROPERTY, at § 7.16 (3d ed. 2003)). These regulations place responsibility for the control of vehicles and equipment on the motor carrier, an obligation that "'may not be contracted away or delegated to another party.'" *Id.* at 670 (quoting NISSENBERG, § 7.16). This results in the driver and the driver's employees being deemed statutory employees of the motor carrier, and the carrier "becom[ing] vicariously liable as a matter of law for the actions of the statutory employees in the operation of the truck." *Id.* (quoting NISSENBERG, § 7.16). The statutory employee doctrine "is intended to prevent a 'motor carrier' from using the independent contractor defense in lease situations to avoid vicarious liability for a claimed independent contractor's negligence." *Id.* at 672.

¶35    Rogers contends that the applicable federal statute and regulation, 49 U.S.C. § 14102(a)[12] and 49 C.F.R. § 390.11, impose on "motor carriers" certain nondelegable duties that create vicarious liability even when such liability would not exist under traditional principles of employment and agency law involving independent contractors. She argues that, by accepting the duty to haul vegetables under the Raw Product Hauling Agreement with Seneca, Transport was acting as a "motor carrier," such that the statutory-employee doctrine applies.

---

[12] Rogers does not actually cite this provision. Instead, she cites 49 U.S.C. § 304(e)(2), which our research indicates no longer exists but instead is codified at 49 U.S.C. § 14102. *See, e.g.*, *Amerigas Propane, LP v. Landstar Ranger, Inc.*, 184 Cal. App. 4th 981, 998, 109 Cal. Rptr. 3d 686, 699 (2010); *Saullo v. Douglas*, 957 So. 2d 80, 83 n.1 (Fla. Dist. Ct. App. 2007).

¶36    It is not clear from Rogers' operative complaint or her briefing on appeal whether her vicarious liability claim is based solely on federal motor carrier law or whether she intends to make a claim under Wisconsin tort law, relying on nondelegable duties that may be imposed by federal motor carrier law.  However, we need not decide which of these two arguments she makes, because the parties appear to agree for purposes of this appeal that a claim may be made based on federal motor carrier law and that the central issue bearing on that claim is whether, with respect to the transaction with Seneca, Transport acted as a "motor carrier" under federal law as alleged by Rogers, or solely as a "broker" as argued by Great West.  Rogers does not dispute for purposes of appeal that, if Transport acted solely as a broker in the Seneca transaction, then her vicarious liability claim fails.  Likewise, Great West does not dispute for purposes of appeal that, if Transport acted as a motor carrier, then Rogers may have a viable vicarious liability claim (putting aside for the moment Great West's argument with respect to interstate commerce, which is discussed below).  For the reasons explained below, we conclude that material factual disputes remain as to whether Transport acted as a motor carrier with respect to the Seneca transaction.  As a result, we conclude that the circuit court erred in dismissing Rogers' claim alleging vicarious liability based on federal motor carrier law.

¶37    Federal law defines a "motor carrier" as "a person providing motor vehicle transportation for compensation."  49 U.S.C. § 13102(14).  A "broker" is defined as "a person, other than a motor carrier or an employee or agent of a motor carrier, that as a principal or agent sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation."  49 U.S.C. § 13102(2).  The distinction between a motor carrier and broker is elaborated upon

in federal regulations: "Motor carriers ... are not brokers within the meaning of this section when they arrange or offer to arrange the transportation of shipments which they are authorized to transport and which they have accepted and legally bound themselves to transport." 49 C.F.R. § 371.2(a); *see also* ***Richwell Grp., Inc. v. Seneca Logistics Grp., LLC***, 425 F. Supp. 3d 57, 61 (D. Mass. 2019) ("[A] party is a carrier in a 'specific transaction' if it takes responsibility for a shipment, whether or not it performed the actual transportation or labels itself as a broker."), *appeal docketed*, No. 20-1015 (1st Cir. Jan. 9, 2020).

¶38 Federal courts interpreting these provisions have held that whether an entity is a carrier or a broker depends on the details of the "specific transaction" at issue. *See, e.g.*, ***Richwell Grp.***, 425 F. Supp. 3d at 61; ***Schramm***, 341 F. Supp. 2d at 549-51; ***Harris v. Velichkov***, 860 F. Supp. 2d 970, 979 (D. Neb. 2012); ***ASARCO LLC v. England Logistics, Inc.***, 71 F. Supp. 3d 990, 995-1000 (D. Ariz. 2014). In considering the specific transaction, "[w]hether a company is a broker or a carrier is not determined by what the company labels itself, but by how it represents itself to the world and its relationship to the shipper." ***ASARCO***, 71 F. Supp. 3d at 995 (quoting ***Hewlett-Packard Co. v. Brother's Trucking Enters., Inc.***, 373 F. Supp. 2d 1349, 1352 (S.D. Fla. 2005) (internal quotation marks omitted)).

¶39 We note that, according to Rogers' operative complaint, at the time of the Seneca transaction, Transport was registered with the United States Department of Transportation as a broker, not as a motor carrier. However, according to Rogers, the fact that an entity is a licensed broker rather than a licensed motor carrier is not dispositive of the issue of whether an ostensible broker is deemed the carrier. Instead, whether an entity is a broker or a carrier depends on what the entity holds itself out to be and whether it has legally bound

itself to transport the goods in connection with the transaction at issue. *See **Ensco, Inc. v. Weicker Transfer and Storage Co.***, 689 F.2d 921, 925 (10th Cir. 1982) ("A carrier's status as a common carrier is determined not by reference to its authority but rather by reference to what it holds itself out to be."). Rogers argues that Transport was acting as a motor carrier because Transport assumed the obligation to haul vegetables for Seneca and it held itself out as a motor carrier under the Raw Product Hauling Agreement.

¶40 The Raw Product Hauling Agreement, attached to Rogers' operative complaint, contains terms that support Rogers' argument that Transport acted as the carrier for this specific transaction. In section I-1., Transport "agree[d] to haul green peas, sweet corn, and lima beans from fields of harvest designated by [Seneca] to factories designated by [Seneca] at times directed by [Seneca]." In sections I-2. and I-3., Transport agreed that each truck would meet certain specifications. Section I-6. further provides:

> [Transport] represents and warrants that [Transport] is a professional motor contract carrier possessing all licenses and permits that are required for hauling raw vegetable products within the State of Wisconsin and is aware of the rules, regulations and laws which govern equipment and drivers engaged in hauling raw vegetable crops. [Transport] further warrants and represents that [Transport] will comply with all such federal, state and local laws, regulations and rules that govern equipment and drivers engaged in hauling raw vegetable crops.

Section III-2. provides that neither Seneca nor Transport "shall sell, convey, assign or transfer, dispose or encumber any of its rights, interests or benefits under this agreement without first obtaining the prior written consent of the other party, which consent shall not be unreasonably withheld." This language tends to show that Transport was not agreeing to act as a broker. By agreeing not to sell, convey, assign, or transfer its rights under the Raw Product Hauling Agreement without

prior approval from Seneca, Transport assured Seneca that Transport was the entity that would perform the hauling under the contract. Had Transport unconditionally reserved the right to sell, convey, assign, or transfer its rights under the Raw Product Hauling Agreement, then Seneca would have been on notice that Transport might get another party (such as Ranken) to perform under the contract in its stead. Transport's reservation of these rights would have supported the view that Transport was acting as a broker and would undermine the view that Transport was agreeing to be the carrier.

¶41 Great West argues that we cannot consider the Raw Product Hauling Agreement in isolation. Specifically, Great West relies heavily on the Trailer Interchange Agreement between Ranken and Transport. Great West notes that under the Trailer Interchange Agreement: (1) Ranken agreed to indemnify Transport; (2) Ranken had ultimate responsibility for hiring and overseeing drivers; and (3) Ranken agreed to act as the motor carrier. Although these factors may be relevant to the issue of whether Transport was a motor carrier or a broker with respect to the transaction at issue here, we conclude that they are insufficient to support judgment on the pleadings with respect to this issue.

¶42 Decisions by federal courts that address whether an entity is a motor carrier or a broker support our conclusion that there is a dispute over material facts in this case. As previously stated, the important factor is "whether the entity holds itself out to the public generally as the actual transporter of the goods." *Tokio Marine and Fire Ins. Co. v. Amato Motors, Inc.*, 770 F. Supp. 426, 428 (N.D. Ill. 1991), *rev'd on other grounds*, 996 F.2d 874 (7th Cir. 1993); *see also* ***Ensco***, 689 F.2d at 925 (same). Courts also consider whether the entity at issue legally bound itself to transport the load at issue. For example, in ***Schramm***, the court rejected the plaintiffs' argument that a company was a carrier within the meaning of

applicable federal law because, among other factors, there was "no evidence" that the company bound itself to haul the shipment or conveyed to the shipper that it would haul the shipment. *Schramm*, 341 F. Supp. 2d at 550.

¶43 In contrast, Rogers alleges that "Transport entered into [a] Raw Product [Hauling] Agreement with Seneca Foods to haul loads of vegetable products dated March 28, 2013," and she contends that Transport became "contractually obligated to haul the load as a motor carrier," thereby "meet[ing] the statutory definition of a motor carrier." Supporting this argument, the Raw Product Hauling Agreement suggests that Transport bound itself to haul for Seneca.

¶44 Rogers' pleadings and the Raw Product Hauling Agreement suffice to create a dispute of material facts regarding whether Transport was a motor carrier within the meaning of federal law. *See Richwell Grp.*, 425 F. Supp. 3d at 61 (collecting cases in which parties were found to be carriers after "tak[ing] responsibility for a shipment, whether or not it performed the actual transportation or labels itself as a broker"). Thus, the circuit court erred in granting judgment on the pleadings and dismissing Rogers' claim.[13]

---

[13] For purposes of remand, we note that, in dismissing Rogers' respondeat superior claim and her claim based on federal motor carrier law, the circuit court appears to have relied, in part, on a three-part test set forth in *Schramm v. Foster*, 341 F. Supp. 2d 536 (D. Md. 2004). However, *Schramm*'s three-part test was applicable only to the plaintiffs' respondeat superior claim under Maryland law, and not to the plaintiffs' claims under federal motor carrier law. *See id.* at 547-51. The *Schramm* court separately addressed the plaintiffs' federal motor carrier claim, relying not on the three part-test under Maryland law but on federal law that, as discussed above, is pertinent to this case. *See id.* at 543-46. Thus, we conclude that, to the extent the circuit court here relied on *Schramm*'s three-part test and consequently on Maryland law in addressing Rogers' second and third claims, such reliance would have been in error.

*C. Interstate v. Intrastate Commerce*

¶45    Finally, we address Great West's argument that the circuit court properly dismissed Rogers' vicarious liability claim under federal motor carrier law because the transaction at issue involved only intrastate rather than interstate commerce.  Great West relies primarily on ***Gonzalez v. Ramirez***, 463 S.W.3d 499, 502 (Tex. 2015), in which the supreme court of Texas concluded that federal motor carrier law applies "only to transportation in interstate commerce."  The ***Gonzalez*** court noted that the driver in that case had not been hired to "transport property across state lines at any point," and therefore concluded that federal motor carrier law did not apply because the transaction did not implicate interstate commerce.  *See **id.***; *see also* 49 C.F.R. § 390.5 (defining "interstate commerce" for purposes of Federal Motor Carrier Safety Regulations).  The court then proceeded to analyze whether the harvesting and hauling company in that case, which had hired the subcontractor that employed the driver whose truck caused the accident, was a carrier under Texas regulations.  ***Gonzalez***, 463 S.W.3d at 503-04.

¶46    Based on the record in this case, we cannot conclude as a matter of law that the shipment at issue here involved only intrastate rather than interstate commerce.  Great West relies on the Raw Product Hauling Agreement between Seneca and Transport, which states that "[Seneca] requires hauling services to transport green peas, sweet corn and lima beans from the fields where they are grown to [Seneca's] plants throughout the State of Wisconsin."  However, as Rogers points out, this language does not indicate where the fields are and is therefore not dispositive of the interstate commerce issue.  Rogers also notes that the address Ranken listed for itself on the Trailer Interchange Agreement was in Rochelle, Illinois, which she states raises the inference that the contract implicated interstate commerce.  Additionally, Rogers points to her allegation in the operative

complaint that All Star was a motor carrier engaged in interstate commerce. Finally, citing federal authority, Rogers argues that the question of whether a transaction is in interstate commerce may not be as straightforward as it seems, and may depend on the "essential character" of the shipment and the intent of the parties. *See Roberts v. Levine*, 921 F.2d 804, 810-12 (8th Cir. 1990); *Century Indem. Co. v. Carlson*, 133 F.3d 591, 595-99 (8th Cir. 1998).

¶47 We conclude that Great West has not shown that there remain no issues of material fact with respect to whether the Seneca transaction involved interstate commerce so as to entitle Great West to judgment on the pleadings. We also note that Great West did not raise this issue before the circuit court, which deprived both the circuit court and Rogers of the ability to address it. And although Rogers argues that Great West's interstate commerce argument is therefore forfeited, we decline to apply the forfeiture rule under the circumstances here. Rather, because we are reversing the court's determination with respect to Rogers' claim involving federal motor carrier law and remanding for further proceedings, we allow the parties to argue this issue on remand and the circuit court to decide it in the course of its further proceedings. Accordingly, the parties remain free to argue this aspect and all other aspects of the vicarious liability claim going forward.

*V. Rogers' Fourth and Fifth Claims: Transport's Negligent Hiring, Training, Retention, and Supervision, and All Star's and Transport's Concerted Action*

¶48 Rogers' final argument is that the circuit court erred in granting judgment on the pleadings with respect to claims four and five because material factual disputes remain regarding whether Transport is liable for the negligent hiring, training, retention, and supervision of Ranken and Kearns (claim 4,

"negligent entrustment claim")[14] and whether All Star and Transport engaged in a "concerted action" to haul vegetables for Seneca (claim 5). The court determined that, upon dismissal of Rogers' first claim, the fourth (negligent entrustment) and fifth ("concerted action/joint enterprise")[15] claims must be dismissed under *Siebert v. Wisconsin American Mutual Insurance Co.*, 2011 WI 35, 333 Wis. 2d 546, 797 N.W.2d 484. Although the court did not name the rule, we understand the court to have reasoned that the independent concurrent cause rule did not apply to extend coverage to Transport's or All Star's actions. The *Siebert* court explained the independent concurrent cause rule as follows:

> The independent concurrent cause rule provides that "[w]here a policy expressly insures against loss caused by one risk but excludes loss caused by another risk, coverage is extended to a loss caused by the insured risk even though the excluded risk is a contributory cause." However, in order to trigger coverage, "[t]he 'independent concurrent cause must provide the basis for a cause of action in and of itself and must not require the occurrence of the excluded risk to make it actionable.'" Stated conversely, if the covered risk is not actionable without the occurrence of an excluded risk, then the covered risk is not sufficiently independent to trigger coverage under the policy.

*Id.*, ¶40 (citations omitted). We affirm the circuit court based on a lack of development in Rogers' arguments on appeal.

---

[14] Although Rogers does not use the phrase "negligent entrustment" to refer to her claim based on negligent hiring, training, retention, and supervision, she does not dispute the circuit court's or Great West's characterizing her claim as being one of negligent entrustment, and we consider this characterization to be appropriate.

[15] Rogers does not provide any explanation or citation to any authority with respect to her claim for "concerted action/joint enterprise." It is not clear to us if she means to assert this theory as a separate and stand-alone ground for liability or whether she intends to suggest that concerted action between Transport and All Star bears on one of the other four claims alleged in her complaint. We assume without deciding that Rogers means to allege a stand-alone claim, whatever its elements might be, and proceed to affirm the circuit court's dismissal of the claim for the reasons stated in the text.

¶49 In *Siebert*, the policyholder's daughter, who was an insured under the policy, gave permission to her boyfriend to drive the policyholder's car to a food pantry and then return. *Id.*, ¶7. The boyfriend exceeded the scope of his permission, picking up additional passengers and heading to a party. *Id.*, ¶¶7-8. On the way to the party, he lost control of the car and was killed along with another passenger, and the remaining passengers were injured. *Id.*, ¶¶9-10. Because the policy did not cover the driver's alleged negligent operation of the vehicle, one of the injured passengers, Siebert, sued the policyholder's insurer, alleging that the daughter's entrustment of the vehicle to her boyfriend was negligent because she knew that he lacked a valid driver's license. *Id.*, ¶¶1, 12, 18-19. The complaint further alleged that the daughter's negligent entrustment was "'a separate and distinct act of negligence from [the boyfriend's] negligent operation of the vehicle.'" *Id.*, ¶19.

¶50 Our supreme court determined that there was no coverage under the policy for the daughter's alleged negligent entrustment of the vehicle to her boyfriend "because that act [was] not an independent concurrent cause of [] Siebert's injuries." *Id.*, ¶55. The *Siebert* court stated: "Specifically, the alleged negligent entrustment of the vehicle is not actionable without the occurrence of an excluded risk—the alleged negligent operation of the vehicle. Therefore, there is no coverage for Siebert's negligent entrustment claim, and [the insurer] is entitled to summary judgment." *Id.*, ¶56.

¶51 In dismissing Rogers' fourth and fifth claims based on *Siebert*, the circuit court stated:

> This Court essentially reads *Siebert* to require some independent process or step or incident, accident, occurrence, whatever magic word you want to use, that

29

might have caused damage to [Rogers] in order to sustain that.

There is no circumstance that this Court could find pointed to in any way, shape, or form but for the negligence of Kearns and theoretically and/or Ranken I suppose, that [Rogers] suffered damage.

Without that underlying negligent act, there is no damage to [Rogers], and as a result, I think I'm effectively required to dismiss both [the] fourth and fifth claims as well.

¶52   Despite the circuit court's exclusive reliance on the reasoning in *Siebert* to dismiss these claims, Rogers fails to discuss *Siebert* in her brief-in-chief.  In fact, Rogers provides no legal authority for her argument that the court's dismissal of her negligent entrustment and "concerted action/joint enterprise" claims was error.  In her reply brief, when addressing Great West's point in its respondent's brief that Rogers fails to discuss *Siebert* or other authority on these two claims, Rogers simply notes that *Siebert* was decided on summary judgment rather than on judgment on the pleadings.  Rogers further states that she alleged negligence on the part of All Star and/or Transport in her complaints, and that this allegation should suffice to withstand judgment on the pleadings.  Even if we were to consider arguments raised for the first time in her reply brief, which we typically do not do, Rogers' response would be insufficiently developed.

¶53   Because Rogers does not provide any relevant legal authority or developed arguments with respect to the circuit court's dismissal of her negligent entrustment and concerted action claims, we do not consider them further.  *See Pettit*, 171 Wis. 2d at 646-47; ***Industrial Risk Insurers v. American Engineering Testing, Inc.***, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 (arguments unsupported by legal authority will not be considered, and we will not abandon our neutrality to develop arguments).  Accordingly, we affirm the circuit court's

order granting judgment on the pleadings dismissing Rogers' claims of negligent entrustment and concerted action.[16]

## CONCLUSION

¶54    For the reasons stated above, we uphold the circuit court's determination that Ranken and Kearns were subject to the clause (6) exclusionary provision in All Star's policy with Great West.  We also conclude that Rogers has failed to develop an argument that the omnibus statute prohibits the application of this clause.  Thus, we affirm the circuit court's dismissal of Rogers' first claim alleging negligence by Ranken and Kearns.

¶55    We further conclude that disputes of material fact remain regarding Transport's status as either a broker or carrier for purposes of Rogers' third claim alleging liability under federal motor carrier law.  We therefore reverse the circuit court's dismissal of that claim and, for the reasons stated above, also reverse the court's dismissal of Rogers' second claim alleging liability under respondeat superior.  With respect to both of these claims, we also remand for further proceedings consistent with this opinion.

¶56    Lastly, we affirm the circuit court's dismissal of Rogers' fourth claim alleging negligent entrustment and fifth claim alleging "concerted action/joint enterprise" because Rogers' arguments with respect to these claims are inadequately developed.

---

[16] We also observe that, in addressing Rogers' negligent entrustment claim, the circuit court's reliance on *Siebert v. Wisconsin American Mutual Insurance Co.*, 2011 WI 35, 333 Wis. 2d 546, 797 N.W.2d 484, appears to be appropriate.  We need not address the court's dismissal of the "concerted action/joint enterprise" claim given Rogers' undeveloped argument with respect to this claim.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.